IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILIP K.,[1] )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FRANK BISIGNANO, )<br>Commissioner of Social Security,[2] )<br>)<br>Defendant. ) | No. 25 C 2339<br><br>Magistrate Judge Gabriel A. Fuentes |

## MEMORANDUM OPINION AND ORDER[3]

Before the Court are Plaintiff Philip K.'s motion and brief in support of reversing and remanding the Commissioner's decision denying his applications for disability benefits (D.E. 17, 18), Defendant's memorandum in support of affirming the Commissioner's decision (D.E. 26, "Def. Mem."), and Plaintiff's reply brief in support of reversal and remand (D.E. 27, "Pl. Reply").

**I.     Procedural History**

Plaintiff applied for benefits on January 20, 2022, alleging a disability onset date of November 17, 2020. (R. 17.) After a hearing, the Administrative Law Judge ("ALJ") issued a

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Frank Bisignano for his immediate predecessor, Leland Dudek, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On March 13, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 8.)

written decision denying Plaintiff's applications on December 12, 2023, finding him not disabled under the Social Security Act (the "Act").[4] This appeal followed.

## II. The ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of November 17, 2020. (R. 19.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spine and cervical and lumbar spinal stenosis, as well as several non-severe impairments. (R. 20-22.) At Step Three, the ALJ found Plaintiff's impairments alone or in combination did not meet or medically equal any Listing. (R. 23.) The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work but "he cannot push/pull more than 35 pounds, cannot perform overhead work, requires breaks ever[y] two hours, and can occasionally squat, bend, or stoop." (R. 24.) At Step Four, the ALJ found Plaintiff was not capable of performing his past relevant work but that he was capable of performing other jobs that exist in significant numbers in the national economy such as cashier, cafeteria attendant, and mail room clerk at Step Five. (R. 33-34.) Thus, the ALJ determined that Plaintiff was not disabled under the Act. (R. 34.)

## III. Legal Standard

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

2

most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054. "Our role is extremely limited, and we do not reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain v. Bisignano*, 148 F.4th 490, 496 (7th Cir. 2025) (internal quotations omitted). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement as ALJs: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**IV.  Analysis**

Plaintiff raises several issues on appeal, none of which warrants remand.

**A.  The RFC Assigned By the ALJ Was Supported By Substantial Evidence.**

Plaintiff contends the ALJ did not adequately explain why she assigned an RFC that "precluded [Plaintiff] from overhead work but found no additional reaching limits," and that the ALJ was required "to explain why the evidence demonstrat[ing] pain and limits in Plaintiff's shoulders supported only limits reaching overhead, but not forward." (D.E. 18: Pl.'s Br. in Supp. of Reversing the Commissioner's Decision ("Pl. Br.") at 2-3.) In his reply brief, Plaintiff suggests that the ALJ failed to account for medical evidence showing "the apparent progression of Plaintiff's neck, shoulders, and upper extremity symptoms and the objective evidence since [primary care physician] Dr. [Nesreen] Hermes offered his opinion" in February 2020, as the ALJ

3

adopted the reaching limitations in Dr. Hermes' report. (Pl. Reply at 2-3.) But the ALJ considered and detailed the post-2020 medical evidence, including much of the evidence Plaintiff cites in support of his claim that his symptoms had progressed, and the ALJ adequately supported her conclusion that this evidence warranted RFC limitations on pushing, pulling, and overhead reaching. Plaintiff presents no evidence that he had additional limitations reaching in other directions. As the Seventh Circuit "ha[s] underscored time and again, a claimant bears the burden of proving their disability" by "present[ing] evidence of limitations affecting their capacity to work." *Thorlton v. King*, 127 F.4th 1078, 1080-81 (7th Cir. 2025). Despite his burden to do so, Plaintiff "identifies no specific limitations that the ALJ should have included in the RFC. Nor does []he identify any specific evidence the ALJ overlooked" that indicated he had additional reaching limitations. *Padua v. Bisignano*, 145 F.4th 784, 791-92 (7th Cir. 2025). To the extent Plaintiff is arguing the ALJ should have weighed the evidence differently and come to different conclusions as to reaching limitations in the RFC, the Court's review of the ALJ's opinion will not "reweigh evidence, make credibility determinations, or substitute our judgment for the ALJ's determination." *Cain*, 148 F.4th at 496; *see also Rabdeau v. Bisignano*, 155 F.4th 908, 913 (7th Cir. 2025) (affirming ALJ decision that "sufficiently contended" with evidence and "ultimately weighed the equivocal record in a way that disfavors" the claimant).

Plaintiff also argues that the ALJ "failed to account for mild mental impairments, without any explanation for the omission." (Pl. Br. at 4-5.)[5] This argument follows the same script Plaintiff used with regard to the reaching limitations. Plaintiff cites evidence that the ALJ already largely considered rather than pointing to evidence that he had functional limitations that the ALJ failed to include in the RFC. (*See id*. at 6-7.) Plaintiff's statement in his reply brief that "the ALJ did not

---

[5] Plaintiff does not contest the ALJ's determination that his mental impairments were nonsevere.

4

grapple with either the positive or negative evidence" (Pl.'s Reply at 5) misstates the ALJ's decision, which, as the Court explains further below, more than adequately considered both the positive and negative evidence of Plaintiff's mental health. The "ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). Yet Plaintiff again fails to identify any evidence-based restrictions the ALJ overlooked or should have included in the RFC. The ALJ's determination that Plaintiff had overhead reaching limitations and no functional limitations from his mental impairments was supported by substantial evidence.

### B. The ALJ's Weighing of the Medical Opinion Evidence Was Supported By Substantial Evidence.

Plaintiff next argues the ALJ's assessment of certain medical opinions in the record was not supported by substantial evidence. (Pl. Br. at 7.) In determining the persuasiveness of a medical opinion, the ALJ must articulate whether the opinion is supported by relevant, objective medical evidence and is consistent with other medical evidence in the record. *Cain*, 148 F.4th at 496-97, citing 20 C.F.R. §§ 416.920c(a) and (c)(1)-(5). In making this determination, ALJs are subject "to only the most minimal of articulation requirements." *Id*. at 497 (internal quotations omitted).

Plaintiff first takes issue with the ALJ's assessment of a February 2020 "fitness for duty" questionnaire, in which Dr. Hermes opined Plaintiff could work with restrictions including no lifting greater than 20 pounds, no pushing and/or pulling greater than 35 pounds, no overhead work, and limited squatting, bending, stooping and prolonged standing. (R. 377-78.) The ALJ adopted these limitations into the RFC[6] but found Dr. Hermes' opinion was only partially persuasive as other evidence "supports a conclusion that the claimant is physically capable of far

---

[6] Defendant's memorandum states that the ALJ did not adopt Dr. Hermes' no prolonged standing limitation (Def. Mem. at 12), but the Court sees the RFC's limitation to light work with breaks every two hours as addressing this portion of Dr. Hermes' opinion.

more." (R. 32.) Plaintiff calls this statement inconsistent with the ALJ's decision to adopt the limitations in Dr. Hermes' report (Pl. Br. at 7), but any inconsistency in the ALJ's assessment of Dr. Hermes' opinion was harmless, as the ALJ incorporated the limitations from Dr. Hermes' opinion into the RFC. Plaintiff also contends that the ALJ failed to articulate the consistency of Dr. Hermes' opinion with "both positive and negative evidence" in the record. (Pl. Reply at 7-8.) But the ALJ reviewed the medical record of Plaintiff's physical impairments in detail throughout the opinion, and "[w]e review the ALJ's decision holistically to determine whether the ALJ grappled with evidence favorable to the claimant." *Chrisman on behalf of N.R.C. v. Bisignano*, 137 F.4th 618, 624 (7th Cir. 2025). The Court finds that the ALJ's explanation as a whole adequately articulated why the evidence supported the RFC limitations set forth in Dr. Hermes' opinion. (*See* R. 25-28; *see also* R. 33 (explaining the ALJ's decision to add an overhead reaching limitation to the non-examining state agency physical RFC determinations.))

Second, Plaintiff contends that the ALJ erred in finding the chronic pain RFC questionnaire filled out by treater Suzette Chevere, APRN, on November 1, 2022, "not at all persuasive" because the ALJ "did not point to any inconsistencies" between Nurse Chevere's opinion and other record evidence and did not identify "anything in Nurse Chevere's own treatment notes that was inconsistent with her opined limits." (Pl. Br. at 8-9.) This misconstrues the ALJ's opinion. The ALJ reviewed Ms. Chevere's opinion that Plaintiff was too disabled to work, in that during an eight-hour workday he could not: sit, walk, and/or stand more than four hours total; lift more than 10 pounds occasionally; and reach more than 10 percent of the time. (R. 32-33.) The ALJ then cited specific evidence in the record that demonstrated Ms. Chevere's opinion was "not only inconsistent with [consultative medical examiner] Dr. [Muhammad] Rafiq's normal, detailed examination of the claimant but also Ms. Chevere's own normal examination findings." (*Id.*) The

6

ALJ detailed the "essentially unremarkable" findings from Dr. Rafiq's exam, including no tenderness in Plaintiff's neck and normal range of motion ("ROM") of the cervical spine, shoulders, elbows, wrists, hips, knees, and ankles, as well as Ms. Chevere's own normal exam findings from 2022 through January 2023, showing Plaintiff had normal ROM and improvement in symptoms with pain management services. (R. 28, 30-33.) The ALJ's decision was thus supported by substantial evidence.

Third, Plaintiff contends that the ALJ failed to explain adequately why she found the mental impairment questionnaire completed by Plaintiff's therapist Simone Gillen, L.S.W., on October 21, 2022, to be unpersuasive and inconsistent with evidence of "abnormalities" in the medical record. (Pl. Br. at 9-10.) The Court disagrees. The ALJ reviewed Ms. Gillen's opinion that Plaintiff "would be absent from work three or more times a month" and was "markedly limited in his ability to perform activities within a schedule, maintain regular attendance," and determined that this opinion was "inconsistent with [treating psychiatrist Dylan Kathol, M.D.]'s grossly intact mental status findings, [consultative mental health examiner Roberta Stahnke, Psy.D.]'s essentially unremarkable mental status findings, and Dr. Rafiq's completely normal mental status examination findings." (R. 32.) The ALJ explained that Dr. Stahnke observed Plaintiff was well-organized, goal-directed, fully oriented and cooperative, and that he had unimpaired memory, good attitude, fair hygiene and a congruent affect, despite being depressed and anxious; while Dr. Kathol observed Plaintiff's thought process was linear and logical, although circumstantial, with grossly normal memory and the ability "to attend to the interview." (R. 21-22.) The ALJ also found Ms. Gillen's opinion was unsupported by and inconsistent with Dr. Rafiq's "completely normal" mental status exam of Plaintiff. (*See* R. 21-22, 30.)[7] Despite Plaintiff's complaint that Dr. Rafiq's

---

[7] The Court notes that Ms. Gillen's opinion was internally inconsistent, as she opined that Plaintiff's mental impairments were so severe that he could not perform full-time work, yet Ms. Gillen determined that

7

mental status exam was conducted during an internal medicine exam (Pl. Br. at 10-11), the ALJ's determination that Ms. Gillen's opinion was unsupported and inconsistent with the evidence in the record as a whole was supported by substantial evidence.

### C. The ALJ's Evaluation of Plaintiff's Subjective Statements Was Supported By Substantial Evidence.

Lastly, Plaintiff's contention that the ALJ's evaluation of his subjective statements "failed to explain her conclusions and failed to analyze the required factors" is a nonstarter. (Pl. Br. at 11.) The regulations instruct ALJs to consider several factors in evaluating a claimant's subjective statements, including the intensity and limiting effects of symptoms, treatment and efficacy, work during disability period, daily activities, and statements inconsistent with the record. *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025). The Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *Id*. (internal citations and quotations omitted).

Plaintiff acknowledges that the ALJ reviewed and summarized the evidence "before concluding that the evidence did not support Plaintiff's statements," but contrary to Plaintiff's claims (Pl. Br. at 12), the ALJ's review included adequate discussion of aggravating or relieving factors of Plaintiff's pain and mental health symptoms, Plaintiff's treatment history, Plaintiff's daily activities, and the inconsistencies between the evidence and Plaintiff's reports about his symptoms and limitations from his physical and mental impairments. With regard to Plaintiff's physical impairments, the ALJ recognized that "[i]maging clearly demonstrated significant findings regarding the cervical spine and the lumbar spine" and that Plaintiff at times received trigger point injections and took other medication for pain, but after going through the medical

---

Plaintiff had only moderate limitations in concentration, persistence, or pace, and *no limitations* in the other three areas of mental functioning. (R. 868-70.)

evidence in detail, the ALJ concluded that with treatment, "examination findings showed only minor abnormal findings and reflect improvement" in symptoms including pain and ROM. (R. 30-31.) And the ALJ did not discount Plaintiff's statements "based solely upon the objective evidence" as Plaintiff claims. (Pl. Reply at 11.) The ALJ pointed to evidence that Plaintiff "was able to return to his job as a TSA security guard and do this for some time," did a "three-month detail working for the SBA," and "perform[ed] significant physical activities" such as heavy biking and walking in 2020. (*Id.*) Thus, the ALJ adequately supported her conclusion that "the medical findings simply do not support the degree of limitation alleged by the claimant," and that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the longitudinal record." (R. 31.)

The ALJ's discussion with regard to Plaintiff's mental impairments was also not patently wrong. The ALJ reviewed notes from Plaintiff's mental health appointments, observing that while they "show[ed] little detail and no abnormal mental status exam findings," they showed Plaintiff's symptoms improved with antidepressants, anti-anxiety medication, and therapy. (R. 26-27, 31.) In addition, the ALJ noted that Dr. Kathol's and Dr. Stahnke's mental evaluations of Plaintiff were "essentially unremarkable," and Dr. Rafiq's mental status exam was "completely normal." (*Id.*) The ALJ also reviewed Plaintiff's activities, noting that Plaintiff lives alone in an apartment and manages his sister's apartment building, and that despite "alleg[ing] having difficulty leaving his apartment, he was able to visit his sister in San Francisco, presumably via plane, and walk around San Francisco." (*Id.*; *see also* R. 22.) As such, the ALJ went through the necessary factors in evaluating Plaintiff's subjective statements, and the ALJ's evaluation was not patently wrong.

9

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion to reverse and remand the ALJ's decision (D.E. 17, 18) and grants Defendant's motion for summary judgment (D.E. 26).

**SO ORDERED.**

                                              **ENTER:**

                                        **GABRIEL A. FUENTES**
                                        **United States Magistrate Judge**

**DATED:  December 23, 2025**